IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 OCT 25 PM 2:58

FRED TEMPLETON, )
)
    Plaintiff, )
)
vs. ) CIVIL ACTION NO. 01-RRA-2229-S
)
BESSEMER WATER SERVICE )
and CITY OF BESSEMER, )
)
    Defendants. )

ENTERED
OCT 25 2004

## MEMORANDUM OPINION

Before the court is the defendants' motion for summary judgment. The court's ruling is based on the evidence specifically pointed out and argued by the parties in their written submissions in support of and in opposition to the motion.

### FACTS and ISSUES

The plaintiff sought either of two positions of Water Distribution Supervisor. He was unsuccessful in both cases.

    Plaintiff was hired by defendants in July 1990 as a Water Utility Service Worker. *July 20, 1990, Personnel Action Form for Fred Templeton: Affidavit of Charles Nevins.* He is a Caucasian male who was fifty-six (56) years old at the time he applied for the position of Water Distribution Supervisor in 2000. *Affidavit of Charles Nevins: EEOC Charge of Fred Templeton.* In October, 1998, a vacancy for Water Distribution Supervisor was created upon the death of Donald Cummings. *Hinton deposition at* 11, 22-23. In March 1999, a second vacancy for Water Distribution Supervisor was created when Terry Hinton was promoted to Water Distribution Superintendent. *Hinton deposition at* 5, 23. In May 1999, Terry Hinton requested a list of eligible employees for Water Distribution Supervisor from the Jefferson County Personnel Board and was informed that a list would have to be established. *Hinton deposition* at 24-25. On June 29, 2000, Terry Hinton again



> requested a list of eligible employees for the Water Distribution Supervisor's job from the Jefferson County Personnel Board. *Hinton deposition* at 20; *Personnel Board of Jefferson County, Certificate of Eligibles*. Mr. Hinton was filling these vacancies simultaneously. *Hinton deposition* at 12; *Templeton deposition* at 29.

*Defendants' Memorandum of Law*, p. 11.

On September 28, 2000, Curtis Parker, Jesse Hinton, Joel Buckner, and the plaintiff interviewed for the two open positions of Water Distribution Supervisor. Parker and the plaintiff are black males. Hinton and Buckner are white males. At the time, Parker was 44 years old, Hinton was 44, Buckner was 39, and the plaintiff was 56. Terry Hinton conducted the interviews,[1] and recommended to his supervisor, Charles Nevins, that Parker and Jesse Hinton be awarded the jobs. Nevins passed the recommendations on to Mayor Mitchell. The plaintiff contends that Parker got the job instead of him because Parker is black and younger, and that Jesse Hinton was preferred because of Hinton's younger age.

The written skills and abilities required for the position of Water Distribution Supervisor were

> knowledge of materials, equipment, processes, and techniques used in the operation and maintenance of water storage and distribution systems; knowledge of federal and state environmental laws as related to water supply and distribution systems; knowledge of the potential hazards and safety practices when working around chlorinators, pumps, and other water distribution equipment; knowledge of general management principles including personnel management, budgeting, inventory control, and policy development; knowledge of governmental purchasing methods and procedures and the laws, rules, regulations, codes, and statutes governing the purchase of materials, supplies, equipment, and services; ability to plan, layout, supervise, and coordinate construction, maintenance, and production operations; ability to read and write blueprints to record water main taps and new water line installation; ability to

---

[1] Terry Hinton is white and was 43 years old at the time.

organize, direct, and coordinate the activities of several work crews; ability to keep records and prepare clear and concise reports; and the ability to establish and maintain effective working relationships with other employees, officials, contractors, developers, plumbers, and the general public. *Job description for Water Distribution Supervisor.*

*Defendants' Memorandum of Law*, ¶13.

The written minimum education, training, and experience requirements were:

High School graduation (or GED) and five years experience in the operation, maintenance, and repair of municipal water facilities including three years supervisory experience; or any combination of education and experience that demonstrates the above listed knowledge, skills, and abilities. The job also requires a Grade 1 Water and Wastewater Certification from the Alabama Department of Environmental Management. *Job Description for Water Distribution Supervisor.*

*Defendants' Memorandum of Law*, ¶14.[2]  "Service worker is you're repairing leaks, and basically, you know, you're fixing all the leaks and everything. A Senior Service Worker is your equipment operator." *Terry Hinton Deposition*, p. 7.

When asked whether the defendants have a custom and practice of promoting senior service workers to the position of Water Distribution Supervisor, Terry Hinton answered, "not really." *Terry Hinton Deposition*, p. 18. When asked whether there are "any rules or guidelines to go by in choosing who is Water Distribution Supervisor," Hinton answered, "not under the Jefferson County Personnel Board." *Id.*

Plaintiff v. Jesse Hinton

*Experience*: Terry Hinton testified that Jesse Hinton was more experienced than the

---

[2]This statement of minimum requirements includes more requirements than the actual Jefferson County Personnel Board's written statement of qualifications, but the plaintiff "admitted" the correctness of this statement.

plaintiff. He stated that he

> recommended Jesse Hinton due to his more than twenty (20) years of field experience. In addition, he had extensive experience in repairing leaks, setting fireplugs, and installing mains; was a Grade 1 certified operator; had previously served as a Lab Technician and as such was able to run water samples through the State of Alabama and knew the mapping system; and he knew where the water mains were and could repair them.

*Terry Hinton Deposition*, pp. 26-28. Terry Hinton further testified that Jesse Hinton had supervised work crews for ten to twelve years. Due to his twenty years experience in the field, Jesse Hinton was made temporary supervisor before he was permanently awarded the position.[3] According to Terry Hinton, the plaintiff was not as experienced as Jessie Hinton because the majority of the plaintiff's experience in the field was setting and removing water meters. Hinton also had more seniority.

The plaintiff had twelve years experience in the field, and the majority of this time was spent setting and removing water meters. He was a serviceman since 1990, and a senior serviceman since 1997. The plaintiff states that he had eight to nine years of supervisory experience, presumably supervising work crews. The plaintiff states that "Terry Hinton has always said that in order to be qualified for the supervisor job you have to have time in as a lead worker," and that "Mr. Jesse Hinton and Mr. Parker have never been a lead worker," *Plaintiff's Answers to Interrogatories*, Plaintiff's Exh. 2, p. 2, and points out that the plaintiff

---

[3]The plaintiff states that Jesse Hinton did not have experience as senior serviceman and lead worker that he needed in order to get the temporary job as supervisor. "According to the Bessemer Board and Terry Hinton, in order to qualify for the job of supervisor, one had to be a senior serviceman lead [sic] worker." *Plaintiff's Answers to Interrogatories*, Plaintiff's Exh. 2, p. 2. However, the plaintiff is not making a claim concerning Hinton's appointment as temporary supervisor. If he were, it appears that such claim would be barred as untimely.)

had been a lead worker. However, the plaintiff seems to question such requirement. He testified:

> Q. Was there an announcement that was put out by the personnel board for this position?
>
> A. Senior lead worker?
>
> Q. Water distribution supervisor?
>
> A. Yes.
>
> Q. Did it have qualifications in it?
>
> A. Yes.
>
> Q. Was being a lead worker one of the qualifications?
>
> A. No, that's one of the City rules.

*Templeton Deposition*, p. 47. Also, Hinton testified "there is no requirement that a lead worker be promoted to supervisor, there is also, no rules at all in deciding what grounds to use to promote. It is complete [sic] ad hoc." *Terry Hinton Deposition*, p. 18.

The plaintiff testified that in 1997, when he expressed an interest in moving from serviceman to supervisor, he was told he had to have a Grade 1 certificate. The plaintiff then went to school for twenty weeks and earned that certificate in September, 1998.[4] The plaintiff states that he had experience working in the job of Water Distribution Supervisor. The plaintiff also states that he had eight to nine years supervising water services crews, and that he was officially listed as a full-time senior lead worker at the time of the promotions in

---

[4]The Personnel Board records state that the plaintiff did not qualify for the position of supervisor until June 15, 2000. There could be a factual dispute as to when the plaintiff qualified, but it is not a determinative factual issue.

question.[5]

*Attitude:* Hinton testified that the plaintiff displayed a bad temper at work and had trouble dealing with customers. Terry Hinton received four to five complaints from customers concerning the plaintiff from March, 1999, until September, 2000. He never received such complaints about Jesse Hinton. In response, the plaintiff points out that he told Terry Hinton that Jesse Hinton was using city equipment to operate a private company out of his home; however, the plaintiff's "complaint" was not the customer complaint that was the topic of Terry Hinton's testimony. The plaintiff was reprimanded for refusing to repair a water meter leak. The resulting write-up stated that the plaintiff's cooperation and reliability were "very questionable." *April 27, 1994 Warning.* The plaintiff points out that his 1999 and 2000 appraisals stated that he "meets expectations in investigating customer complaints and resolves situations where possible and meets departmental requirements on compliance with rules, policies and procedures." *Plaintiff's Exhibit 8.*

*Plaintiff not more qualified/purported direct evidence of age discrimination*: The plaintiff admits that he was not more qualified than Jesse Hinton: "It is true that Templeton admits that he was not more qualified than Jesse Hinton for the job of supervisor." *Plaintiff's Memorandum*, pp. 15-16. The plaintiff contends "however, [that he] has produced direct evidence that Hinton said it wouldn't do any good to promote Templeton since he was going to retire soon. Terry wanted a young person in the supervisor spot." *Id.* at 16. The plaintiff testified, "Mr. Hinton told me that they were wanting to — was going to hire a younger

---

[5]Apparently, crew supervisor and lead worker are the same.

person and he didn't feel like I would be coming back to work, because of my heart surgery, you know. So I assumed that he didn't want to fool with an older person." *Plaintiff's Deposition*, p. 96.

*Discussion*: *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) established that a plaintiff makes a prima facie case of discrimination "by showing that (1) he is a member of a protected class, (2) he was subjected to an adverse job action, (3) his employer treated similarly situated employees outside his classification more favorably, and (4) he was qualified to do the job." *Id.* at 802. If a prima facie case is established, the employer must state a legitimate, non-discriminatory reason for the action in question; if the employer does so, the plaintiff must show that the non-discriminatory reason is merely a pretext for discrimination. *Rollins v. TechSouth*, 833 F.2d 1525, 1528-29 (11th Cir. 1987). The plaintiff must prove pretext as to each reason put forth by the employer for the adverse decision in question. *Combs v. Meadowcraft, Inc.*, 106 F.3d 1519 (11th Cir. 1997). In this case, the plaintiff contends that he has produced direct evidence of discrimination. If he has, there is no need to apply *McDonnell Douglas*, for "[d]irect evidence of discrimination would be evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir.1989) *citing Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1558 n. 13 (11th Cir. 1988)).

Because "the question of whether a plaintiff has presented direct evidence is not always entirely clear," *Caban-Wheeler v. Elsea*, 904 F.2d 1549 1555 (11th Cir. 1990), examples of what the courts have considered as being and not being direct evidence would be helpful. In

*Earley v. Champion International Corporation*, 907 F.2d 1077 (11th Cir. 1990), the court stated:

> "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter*, 870 F.2d at 582. One example of direct evidence would be a management memorandum saying, "Fire Earley--he is too old." But the evidence at issue here, at most, suggests discrimination, leaving the trier of fact to infer discrimination based on the evidence; by definition then, the evidence is circumstantial. *Rollins*, 833 F.2d at 1529.

*Id.* at 1081-82. It was held in *Lewis v. Smith*, 731 F.2d 1535 (11th Cir. 1984) that an INS reviewing committee's setting aside the file of a female applicant because it was known that the director would not consider hiring a woman was an instance of direct evidence of discrimination. In the Eleventh Circuit case of *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004), the court stated:

> In *Damon*, an age discrimination case, the decisionmaker's comment that "the company needed . . . young men . . . to be promoted" did not constitute direct evidence of discrimination. 186 F.3d at 1359. In *Burrell*, a sex discrimination case, evidence that the decisionmaker told the plaintiff that "he wanted to hire a man for the position because too many women filled First Federal's officer positions" was not direct evidence that she was terminated later because of her sex. 125 F.3d at 1393-94. In contrast, in *Caban-Wheeler v. Elsea*, we held that a statement by the decisionmaker that he wanted a black person to have a white employee's job was direct evidence that the white employee was terminated for racially discriminatory reasons. 71 F.3d 837, 842-43 (11th Cir.1996). We also found direct evidence of discrimination in *Haynes v. W.C. Caye & Co., Inc.*, where the decisionmaker stated that women were simply not tough enough to do the job from which the plaintiff had been removed. 52 F.3d 928, 930 (11th Cir.1995).

*Id.* at 1087. *Barket v. Nextira One*, 72 Fed. Appx. 508, 2003 WL 21982091 (8th Cir. Aug. 21, 2003) involved comments concerning retirement.

> Barket argues that his supervisor, Bird, made several comments to him concerning retirement that provide direct evidence that his termination resulted from age-based animus. We conclude that in the context of this case the statements at issue do not reasonably support such a conclusion. Bird's statements merely reflect the very real fact that Barket was approaching retirement age, that he could no longer perform his job duties, and that retirement was thus an attractive option. We have previously held that these kinds of statements standing alone cannot support an inference of discrimination and should not preclude summary judgment. *See, e.g., Montgomery v. John Deere & Co.*, 169 F.3d 556, 560 (8th Cir.1999) (stating that an employer may make reasonable inquiries into an employee's retirement plans and that the plaintiff should not be able to rely on those inquiries to establish discrimination); *Ziegler v. Beverly Enters.-Minn., Inc.*, 133 F.3d 671, 676 (8th Cir.1998) (holding that suggesting retirement to an employee of retirement age who is not performing to expectations does not provide a reasonable basis for inferring age discrimination); *Thomure v. Phillips Furniture Co.*, 30 F.3d 1020, 1025 (8th Cir.1994) (concluding that remark from owner that employee might want to retire was not sufficient evidence to support verdict because remark did not reflect "discriminatory animus in the decisional process"), *cert. denied*, 513 U.S. 1191, 115 S.Ct. 1255, 131 L.Ed.2d 135 (1995).

72 Fed. Appx. at 510-11.

> Evidence that supervisors called the plaintiff a "bearded, grumpy old man," "pops," and "old man," suggested, at the time of his demotion, that the plaintiff was too old for the aggravation and stress of management issues, and contrasted the plaintiff's advancing age with his replacement's youth, created a genuine issue of material fact as to whether the employer held 'stereotypical beliefs about the capabilities of older managers that influenced its decision to demote' the plaintiff.

*Wexler v. White's Furniture, Inc.*, 317 F.3d 564, 572 (6th Cir. 2003) (en banc). "The statement 'you're too old to carry the mail,' made while firing an employee, is sufficiently blunt that a fact finder could construe it as direct evidence of age discrimination. . . . *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999) (citing cases for the definition of direct evidence)." *Erwin v. Potter*, 79 Fed. Appx. 893, 897, 2003 WL 22514367 (6th Cir. Nov. 4, 2003).

The parties did not expend much argument concerning the question of direct evidence. It is believed that the statement, "Mr. Hinton told me that they were wanting to — was going to hire a younger person and he didn't feel like I would be coming back to work, because of my heart surgery, you know," is not "sufficiently blunt" to be direct evidence of discrimination, rather Hinton's statement was equivocal, being based on the fact that the plaintiff was having health problems.

The defendants contend that a prima facie case of discrimination has not been established because the job did not go to someone outside the protected category, Jesse Hinton being over forty. However, the person who was awarded the job does not have to be under forty, rather he must be merely substantially younger. *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550 (11th Cir. 1988). It is determined that, with respect to Jessie Hinton, the plaintiff has established a prima facie case of age discrimination under *McDonnell Douglas*. The question now is whether there is sufficient evidence that the reasons given for the selection of Hinton over the plaintiff — essentially experience and attitude — were phony reasons.

In order to show that the employer's statement that the person selected was more qualified than the plaintiff was pretextual, the plaintiff's qualifications must be much greater than those of the person selected:

> Other circuits have more clearly articulated the evidentiary burden a plaintiff must meet in order to prove pretext by showing she was substantially more qualified than the person promoted. *See Fulton County*, 207 F.3d at 1340. In *Deines*, for example, the Fifth Circuit affirmed the district court's instruction to the jury stating that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." 164 F.3d at 280.

*Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000). In the case before this court, the plaintiff admits that he was not more qualified than Hinton. The relative qualifications of the plaintiff and Hinton cannot, therefore, establish pretext. The question then is whether the statements about the plaintiff's age, along with other evidence, create a factual issue as to pretext.

In addition to the plaintiff's statement that "Mr. Hinton told me that they were wanting to — was going to hire a younger person and he didn't feel like I would be coming back to work, because of my heart surgery, you know," he also testified:

> Mr. Hinton also made age related comments about my open heart surgery in 1998, referring to the fact that I would not be with the water works much longer and that I was thinking about retirement, so why fool with me in the supervisor position. Mr. Terry Hinton made the recommendation for Jesse Hinton to become the Water Distribution Supervisor to the mayor and the mayor approved it based on Terry Hinton's recommendation.

*Plaintiff's Exhibit 2,* p. 2, Answer to Interrogatory 2.

These statements were made in the context of the plaintiff's health problems; that is, it was because of the plaintiff's health problems, and the possibility that he would not even be returning to work, or, if he did, would not long remain, Hinton wanted to hire someone else, perhaps a younger person who did not have heart problems and would not be retiring soon.[6] Also, the defendants point out that the plaintiff had been promoted to senior service worker the year before, when he was fifty five, which strongly indicates that age was not a consideration in not awarding him the supervisor's job. It is concluded that these "age/health"

---

[6] If these statements were made while the plaintiff was out with health problems, they are even more innocuous.

statements, considered along with all of the other evidence, do not establish a factual issue as to whether the asssertion that Hinton was hired based on qualifications is pretextual. The defendants are due summary judgment on this claim.

Plaintiff v. Parker

When asked what made Parker more qualified than the plaintiff, Hinton testified that "They was - - they run a close race. They was just - - the attitude and stuff like that is what persuaded my final decision. *Terry Hinton Deposition*, p. 28. When asked if he considered "attitude in regards between those two men, Parker and Templeton, as the deciding factor, or did you consider service in the filed as the deciding factor," Hinton testified, "Well, I sat down and weighed it all. I don't know. I can't really sit down and break it down. I weighed all the factors in."*Id.* at 29.

Hinton testified that Parker had fourteen years experience in the field compared to plaintiff's ten to twelve years. The majority of the plaintiff's years experience in the field was spent setting and removing water mains, while Parker had experience repairing mains, setting fire plugs, laying mains, and repairing services. The plaintiff states that Parker was not a serviceman, but a helper for almost all of his career, and that Parker's supervisor was a serviceman, just as the plaintiff was a serviceman. Parker was promoted from helper to serviceman just three to six months before he was promoted to supervisor. The plaintiff asserts that Parker had virtually no supervisory experience. The defendants admit that the plaintiff had more supervisory experience than Parker. Hinton testified that Parker, in contrast to the

plaintiff, interacted well with customers. Finally, Parker had more seniority. After a consideration of all of the evidence, and applying the law previously stated, it is concluded that the plaintiff has not made out a case of age discrimination. The court will now address the claim of race discrimination.

The plaintiff testified Terry Hinton told him that Parker got the job because he was black. The plaintiff has also submitted an affidavit from one Rob Arledge. Arledge stated, "I heard Charles Nevins say that a black had to be hired as a Water Distribution Supervisor pursuant to a court order. He said that they had to have a black supervisor at all times." It is concluded that these statements constitute direct evidence of race discrimination. Once a "plaintiff produces direct evidence, the burden shifts to the defendant to prove by a preponderance of the evidence that the same employment decision would have been reached even absent the discriminatory intent." *Smith v. Horner*, 839 F.2d 1530, 1536 (11th Cir. 1988)(citing *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir. 1982). In this case, the court is not satisfied that the defendants have shown that Parker would have been hired absent such discriminatory intent. In fact, the defendants have not made such an argument.

DECISION

Wherefore, the defendants' motion for summary judgment is due to be granted as to all claims except the claim that, because of race discrimination, the plaintiff was not awarded the

supervisor's job that went to Parker.

DONE this 25th day of October, 2004.

Robert R. Armstrong, Jr.
United States Magistrate Judge